UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LESLY GABRIELA HERNANDEZ BULNES (A xxx-xx1-795) Petitioner, | |
| v. | No. 1:26-cv-3004 |
| | Honorable Paul L. Maloney |
| MARKWAYNE MULLIN, *et al.*, Defendants. | |

**OPINION AND ORDER GRANTING PETITIONER'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

Petitioner filed an Emergency Motion for a Temporary Restraining Order ("TRO") on November 10, 2026. ECF No. 22. For the reasons set forth below, the court **GRANTS** the TRO. The court **ORDERS** Respondents to file their response to Petitioner's request for injunctive relief within three business days of the date of this Order. Respondents should include in their response an answer for why negative and positive fear determinations should be treated differently in terms of immigration judge review.

## I. BACKGROUND

The government detained Petitioner in February of 2026. ECF No. 1 PageID.1. The government sought to remove Petitioner to Honduras, her country of citizenship. *Id.* Petitioner claimed fear of returning to Honduras. ECF No. 8 PageID.46. A USCIS Asylum Officer granted Petitioner a positive credible fear determination and issued a Notice to Appear. *Id.* On July 7, 2026, an immigration judge ordered Petitioner removed but granted withholding to Honduras. *Id.*

On July 13, 2026, the government served Petitioner with a Notice of Third Country Removal to Mexico. *Id.* PageID.47. Petitioner claimed fear of return to Mexico. ECF No. 23 PageID.136. A USCIS Asylum Officer determined Petitioner does not have a credible fear-based claim. *Id.* Under DHS's Guidance Regarding Third Country Removals (the "Guidance"), if the Asylum Officer "determines that the alien has not met [the fear-based claim] standard, the alien will be removed." ECF No. 8-2 PageID.87.

On October 20, 2026, Petitioner filed a petition for writ of habeas corpus in this court. ECF No. 1. Petitioner argues that she has a due process right to meaningful notice and opportunity to present a fear-based claim to an immigration judge before the government may deport her to a third country. *Id.* PageID.12.

On November 10, 2026, Petitioner filed this TRO. ECF No. 22. Petitioner asks this court "to order Respondents to maintain the *status quo* and refrain from deporting Petitioner from the United States until the court has adjudicated her Petition for a Writ of Habeas Corpus." ECF No. 23 PageID.134.

## II. LEGAL STANDARD

District courts may issue TROs at their discretion. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). Under Rule 65, courts may issue TROs without notice to the adverse party only if two conditions are met. Fed. R. Civ. P. 65(b)(1). First, the moving party must establish specific facts through an affidavit or a verified complaint showing that an immediate and irreparable injury will result to the moving party before the adverse

party can be heard in opposition to the motion. Fed. R. Civ. P. 65(b)(1)(A).[1] Second, movant's counsel must certify in writing any efforts made to give notice and the reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1)(B). In addition, courts must consider each of four factors: (1) whether the moving party demonstrates a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury without the order; (3) whether the order would cause substantial harm to others; and (4) whether the public interest would be served by the order. *Ohio Republican Party*, 543 F.3d at 361 (quoting *Northeast Ohio Coalition for the Homeless and Service Employees International Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). The four factors must be balanced together. *Blackwell*, 467 F.3d at 1009.

## III. ANALYSIS

As explained below, the court finds that the balancing of the four factors weighs in favor of granting Petitioner's TRO.

### 1. Likelihood of Success on the Merits

Before diving into its analysis, the court will first explain the government's current procedure for handling fear-based claims. United States Code Title 8 Section 1231(3)(A) precludes the government from removing "an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country[.]" On March 30, 2025, DHS issued a Guidance seeking to "clarif[y] DHS policy regarding the removal of aliens with final orders of removal" pursuant to that statute. ECF No. 8-2 PageID.86. Under

[1] Petitioner gave Respondents notice of this TRO.

the Guidance, when an alien presents a fear-based claim of removal to a specific third-country, a USCIS Asylum Officer will conduct a screening to determine whether the alien meets the standard set out in § 1231(3)(A). *Id.* PageID.87. If the Asylum Officer decides that the alien presented a fear-based claim, then the Asylum Officer "will refer the matter to the Immigration Court," or, the government may choose a different country for removal. *Id.* If, however, the Asylum Officer determines that the alien failed to present a fear-based claim, then "the alien will be removed." *Id.*

District courts have agreed that due process requires both "the provision of a reasonable fear interview by a DHS asylum officer *and* the opportunity to have a negative fear determination reviewed by an immigration judge" before the government may remove an alien to a third country. *E.g., Omordion v. Guadian*, No. 26-3265, 2026 WL 2923746, at *10 (D. Md. Sept. 29, 2026) (emphasis added); *Cruz Medina v. Noem*, 806 F. Supp. 3d 536, 552 (D. Md. 2025); *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025); *Serpas v. Simon*, 834 F. Supp. 3d 656, 669 (E.D. Va. 2026); *Portela-Hernandez v. Trump*, No. 25-1633, 2026 WL 74042, at *12 (D. Md. Jan. 9. 2026); *see Dia v. Raycraft*, No. 1:26-cv-1054, 2026 WL 1476507, at *9 (W.D. Mich. May 27, 2026) (finding that the Guidance likely violates due process but declining to "dictate the process that [petitioner] is entitled to at this stage of the proceedings); *Ahmed v. Blanche*, No. 26-cv-2265, 2026 WL 2996562, at *4-7 (D. Minn. Oct. 6, 2026) (finding that the Guidance likely violates due process); *Arenado-Borges v. Bondi*, No. 2:25-cv-02193, 2025 WL 3687518, at *6-7 (W.D. Wa. Dec. 19, 2025) (same).

Courts that have reached this conclusion have done so by applying the *Matthews* test, which sets out the procedure that a court must follow to determine "what form of notice and opportunity for hearing is appropriate and thus constitutionally required in a given case[.]" *Cruz Medina*, 806 F. Supp. 3d at 547–48 (internal quotations omitted). Under *Matthews*, courts consider the following three factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, the private interest at stake here is Petitioner's interest in not being removed to a country where she would face persecution or torture. *Omordion*, 2026 WL 2923746, at *10. That interest "is precisely the type of interest that courts consistently have held is significant enough to justify procedural protections[.]" *Cruz Medina*, 806 F. Supp. 3d at 549.

Second, "the risk of an erroneous deprivation is high under the procedures described in the DHS Guidance." *Omordion*, 2026 WL 2923746, at *11; *e.g., Cruz Medina*, 806 F. Supp. 3d at 549; *Portela-Hernandez*, 2026 WL 74042, at *11. The question before this court is whether a single asylum officer's decision "is sufficient to adequately minimize the risk of an erroneous rejection of a fear-of-persecution claim." *Cruz Medina*, 806 F.3d at 549. The court concludes that the answer is no. As the *Cruz Medina* court said, "the court need look no further than DHS regulations themselves to conclude that, where a person alleges that he would be persecuted or tortured if removed to a particular country, a single review by an

asylum officer creates an unacceptably high risk of erroneous deprivation." *Id.* Indeed, in analogous proceedings where aliens face the potential reinstatement of a removal order, DHS's own regulations provide that "[t]he asylum officer's negative decision regarding reasonable fear shall be subject to review by an immigration judge upon the alien's request." 8 C.F.R. § 208.31(g). The court does not see "why there is any lesser risk of erroneous deprivation in this scenario." *Cruz Medina*, 806 F.3d at 549. For due process purposes, the court also does not see why a negative fear determination should be treated differently from a positive fear determination for purposes of immigration judge review.

Third, requiring immigration judge review "requires significant but minimally burdensome procedural safeguards in the form of independent review by a subject-matter expert and the opportunity to receive a written explanation or a denial by an immigration judge." *Portela-Hernandez*, 2026 WL 74042, at *12 (citation modified; internal citations and quotations omitted). And the fact that immigration judge review is required when the asylum officer makes a positive fear determination undercuts any argument that this requirement is too burdensome. Additionally, DHS regulations provide for this procedural safeguard in analogous contexts where an asylum officer makes a negative fear determination. This fact further convinces the court that requiring immigration judge review in this context would not unreasonably burden the government.

The court therefore concludes that Petitioner has shown a strong likelihood of success on the merits of her claim that due process precludes her removal to Mexico until she is given the opportunity for an immigration judge to weigh-in on the Asylum Officer's negative fear determination. This factor weighs in favor of the court issuing the TRO.

2. **Irreparable Harm**

Removal without due process constitutes irreparable harm. *See Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed."). Respondents admit that "ICE is actively working to remove Petitioner." ECF No. 8 PageID.51. The threatened harm here is that Petitioner will face persecution, torture, or death if Respondents remove her to Mexico. Moreover, Petitioner may be removed to Honduras from Mexico, a country where everyone agrees Petitioner has a legitimate fear-based claim of persecution. Thus, the court concludes that Petitioner has shown irreparable harm. This factor weighs in favor of the court issuing the TRO.

3. **Harm to Others**

Temporarily restraining Respondents from removing Petitioner to Mexico until the court may issue its ruling on Petitioner's Petition for Writ of Habeas Corpus will not detrimentally harm Respondents. The government has a legitimate interest in removing individuals who have illegally entered the United States, but the issuance of this TRO will only cause a minimal delay. Additionally, there is no allegation that Petitioner is dangerous. Thus, the TRO will not cause harm to others. This factor weighs in favor of the court issuing the TRO.

4. **Public Interest**

The public interest weighs in favor of Petitioner here. There is "a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). There is also a

"public interest in upholding constitutional rights and providing due process to individuals subjected to governmental actions restricting their liberty." *Cruz Medina*, 806 F. Supp. 3d at 553. Both interests weigh in favor of the court issuing the TRO. There is also, however, "a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. This interest "may be heightened by the circumstances," like if "the alien is particularly dangerous, or has substantially prolonged his stay by abusing the processes provided to him." *Id.* Neither circumstance is present here. Thus, the court finds that the public interest weighs in favor of the court issuing the TRO.

## IV. CONCLUSION

Consistent with the Chief Judge of this District's order in a similar case,[2] the court **GRANTS** Petitioner's TRO to preclude Respondents from deporting Petitioner from the United States. ECF No. 22. The court **ORDERS** Respondents to file their response to Petitioner's request for injunctive relief within three business days of the date of this Order. Respondents should include in their response an answer for why negative and positive fear determinations should be treated differently in terms of immigration judge review. This Order binds the parties until the earlier of (1) the court's resolution of Petitioner's Petition for Writ of Habeas Corpus, or (2) 14 days from the date of this Order.

**IT IS SO ORDERED.**

Date: November 12, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge

[2] In *Dia v. Raycraft*, No. 1:26-cv-1054, 2026 WL 1895956, at *4 (W.D. Mich. Apr. 14, 2026), Chief Judge Jarbou issued a temporary restraining order precluding the government from removing the petitioner in that case "to Ghana or any other third country before he has been given a full and fair opportunity to raise a fear-based claim about his removal to that specific country before an immigration judge."